United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Vidak,<br><br>       Plaintiff,<br><br>       v.<br><br>Michael J. Astrue, et al.,<br><br>       Defendants.<br>_____/ | No. C 10-2637  JL<br><br>**ORDER GRANTING IN PART SUMMARY JUDGMENT FOR PLAINTIFF, DENYING SUMMARY JUDGMENT FOR DEFENDANT (Granting in Part Docket #12, Denying Docket #19)** |

### I. Introduction

The Court received the parties' cross-motions for summary judgment, Plaintiff's was e-filed at Docket # 12, Defendants' was e-filed at Docket # 19. Both parties consented to this Court's jurisdiction under 28 U.S.C. §636(c). The Court carefully considered the moving and opposing pleadings in both motions, the Administrative Record in this case, and the applicable law.  The Court finds that the Administrative Law Judge ("ALJ") did not provide clear and convincing reasons for finding Plaintiff's testimony not credible regarding the severity and limiting effects of his pain.  The Court hereby DENIES Defendants' motion, GRANTS Plaintiff's motion in part and remands the matter to the agency for further findings regarding Plaintiff's credibility and testimony regarding the limiting effects of his pain.

### II. Factual Background

In December of 2007, William Joseph Vidak, ("Plaintiff"), applied for Disability

Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI, respectively, of the Social Security Act (SSA), stating the onset of a disability as May 30, 2006. Plaintiff was born January 3, 1965, making him almost 43 years old when he applied for benefits.

Plaintiff dropped out of school after completing the eighth grade. AR 30,134. In the early 1990s, Plaintiff attended a trade school course in computer repair for a little over a year. AR 34. Plaintiff began working as a computer repair technician in 1994. Three years later he began working as an information technology technician for the San Mateo County Sheriff's Office. AR 129, 143. He worked in this capacity at the Sheriff's office from 1997 to 2006, at which time he stopped working due to back pain. AR 15. Plaintiff's back pain stems from an on-the-job injury he sustained on October 23, 2003 while attempting to move a cart of computers. AR 15, 192. Plaintiff filed for Worker's Compensation and received pain management treatment. AR 192-195. Although Plaintiff was initially able to return to his usual and customary duties at work, his treating physician, Chris Mochizuki, M.D., reported that Plaintiff suffered at least two more aggravations of his lumbar injury in 2004 and 2005. AR 192. On May 1, 2006, Dr. Mochizuki found Plaintiff to be permanent and stationary. AR 195. Dr. Mochizuki opined that Plaintiff should be restricted from lifting over twenty-five pounds, repetitive bending, repetitive stooping, walking for more than fifty-five minutes per hour, sitting more than thirty minutes per hour, and standing for more than thirty minutes per hour. *Id.* Dr. Mochizuki also found Plaintiff to be a qualified injured worker and noted that he "cannot continue doing his usual and customary duties." Id. On May 30, 2006, Plaintiff was unable to work any longer due to his worsening pain. AR 46, 129-130, 143-150. Plaintiff enrolled in a computer-training course through Vocational Rehabilitation subsequent to his initial injury, but was unable to finish the course due to his back pain. AR 15, 38.

### A.    Medical History

At the time of the hearing before the ALJ, Plaintiff reported that he was

approximately 5'9" tall and weighed 270 pounds. AR 30. MRIs taken in 2003 and 2004 show two bulging discs in Plaintiff's lumbar spine. AR 192. Dr. Mochizuki, Plaintiff's treating orthopedic surgeon, first diagnosed him with lumbar disc displacement and later lumbar radiculopathy (nerve disease)  AR 194. Since this initial diagnosis, Plaintiff's diagnoses have also included L4-5 and L5-S1 degenerative changes, lumbar degenerative disc disease, neuropathic pain syndrome, sacroiliac joint pain, chronic pain syndrome, slipped rib syndrome, foot degenerative joint disease, cervical radiculopathy, carpal tunnel syndrome, myofascial pain syndrome, morbid obesity, and gastrointestinal reflux disease. AR 261, 270, 284, 351, 354.

Dr. Mochizuki noted that Plaintiff was initially treated conservatively at Workforce Medical with an MRI scan, anti-inflammatory medications, and a modification of activities. AR 192. Following his first injury, Plaintiff was able to go back to work at his usual and customary duties, but was precluded from heavy lifting. *Id.* Plaintiff then suffered at least two more aggravations of his lumbar injury in 2004 and 2005. *Id.* Following the aggravations of his injury, Plaintiff experienced "persistent discomfort" and Dr. Mochizuki treated him with multiple epidural cortisone injections and hydrocodone. Id. Plaintiff has continued to experience pain and sought out medical treatment. At the time of his application, Plaintiff's prescribed medications have included Ultram/Tramadol, Ibuprofen, Flexeril/Cyclobenzaprine, Darvocet, Nortriptyline, Prilosec, Lidocain/Lidoderm, Ovar Inahaler, Medrol, Relafen, Vicodin, and Phenylephrine. AR 142, 165, 180, 256, 260, 280. While Plaintiff testified that his pain medications "help", he also stated that the medications caused side-effects such as dry mouth, memory loss, irritation, dizziness, and depression. AR. 43, 52-54. Plaintiff testified that he now suffers from incontinence due to his medications. AR 51. There is no mention of incontinence in the medical record; in fact, the record reflects that at one point Plaintiff "denie[d] any bowel or bladder symptoms." AR 265.

In addition to pain medication and epidural injections, Plaintiff was also treated with acupuncture, chiropractic, and a TENS unit. AR 263. In 2008, after these

treatments failed to sufficiently address Plaintiff's pain, he was recommended to and participated in the level 3 pain management program at Kaiser Permanente. AR 262, 265. According to the Kaiser Permanente website, level 3 is the most intensive program and is "for members who have severe physical impairment from their pain as well as dysfunctional medication use and moderate to severe depression or anxiety." *See* http:///www.permanente.net/homepage /kaiser/pages/d12856-top.html. Plaintiff testified that he has pain in his back and both legs, mostly on the left side. AR 44. He has muscle spasms that pull his rib cage out of place causing problems breathing. *Id.* Plaintiff testified that he has "good days and bad days" with his pain. AR 37. On a bad day he can walk only ten feet; on a good day he can walk fifty yards or more. AR 46-47. Plaintiff's pain is worse in the morning, on a bad day taking up to three hours after waking before he is able to walk. AR 47. Plaintiff testified that his pain has gotten worse over time. *Id.* He is able to drive for twenty to thirty minutes before he needs to pull over to stretch and stand. AR 49. Plaintiff testified that he experiences difficulty grasping objects, tries not to use a computer keyboard, and drops objects such as cups and keys on a weekly and sometimes daily basis. AR 55. Plaintiff takes up to three naps daily from one to three hours and gets about four to five hours a sleep per night. AR 48-49. When he accompanies his wife to the store, he must sit down after a short period of time because his pain increases when walking on cement floors. AR 42. Plaintiff reported that he cannot do household chores for longer than 15 to 30 minutes, and that doing chores increases his pain. AR 142. In a 2007 pain questionnaire, Plaintiff reported experience low back pain that spreads to his upper back, as well as both of his legs and feet. AR 137. He reported that when his pain is severe he cannot walk, and has pain when sitting, standing, walking, bending, lifting, stooping, and sneezing. *Id.*

     Plaintiff's most recent MRI was on November 28, 2007. AR 265. The MRI report found no disc abnormality, no canal stenosis and no neural foraminal narrowing at T12-L1, L2-3, and L3-4. However, at L4-5 and L5-S1. although the MRI showed no

significant canal stenosis, it showed mild broad-based posterior disc bulge and moderate facet joint hypertrophy, as well as mild neural foraminal narrowing. AR 266. The MRI impression noted: chronic pain syndrome; posterior neck pain due to muscle spasms from weakness and strain; mid back pain due to rib 8-9 dysfunction; low back pain due to L>R sacroiliac joint dysfunction; diffuse leg pain and hand numbness due to neuropathic pain syndrome (nerve pain); bilateral feet arch pain – possibly plantar fasciitis; depression; and insomnia. AR 266.

A state agency examiner, Dr. Haveliwala, opined on February 14, 2008 that Plaintiff could perform light work with occasional postural restrictions, except for climbing ladders, ropes, and scaffolds. AR 250-254. In 2008, Plaintiff's new primary care physician at Kaiser Permanent, Dr. Bradus, opined that Plaintiff could perform light work walking up to six hours per day with a five minute break per hour, standing for up to thirty minutes per hour, and sitting for up to thirty minutes per hour. AR 288-289. Dr. Bradus noted that Plaintiff's symptoms are "considered greater than objective findings" but he also stated that he found Plaintiff's account of the severity of his symptoms to be "mostly credible." AR 288, 292.

### B.  Procedural History within the SSA

Plaintiff's initial application for Disability Insurance Benefits and Supplemental Security Income was denied on February 22, 2008. AR 66-69. Plaintiff's application was again denied in a Notice of Reconsideration on August 29, 2008. AR 71-74. Following these denials, Plaintiff filed a Request for Hearing by an ALJ on September 18, 2008. AR 12. Plaintiff appeared and testified at a hearing before ALJ Thomas J. Gaye on January 22, 2010 in San Francisco, CA. AR 12. An impartial vocational expert also appeared at the hearing. *Id.* On February 18, 2010, the ALJ found that the Plaintiff was not disabled and issued a denial of Plaintiff's claim for benefits. AR 9-18. The Appeals Council denied Plaintiff's request for review on May 6, 2010, making the ALJ's decision the final determination of the Commissioner of Social Security for the purpose of judicial review. AR 1-3. Plaintiff then commenced this action pursuant to 42

U.S.C. §§ 405(g), 1383(c)(3).

### III. District Court's Standard of Review of Agency's Decision

When reviewing the Social Security Administration's decision, a district court must look to the administrative record to determine whether the ALJ's denial of benefits is supported by substantial evidence in the record. 42 USC § 405(g). A district court may overturn a decision to deny benefits only if the decision is not supported by substantial evidence, or if there was legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is defined as "more than a mere scintilla but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If there is "more than one rational interpretation" of the evidence, then the ALJ's decision should be upheld. *Andrews*, 53 F.3d at 1040. It is the claimant's initial burden of proving a disability. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

To be affirmed, the ALJ's decision must be supported by substantial evidence in the record as a whole. *See e.g. Thomas*, 278 F.3d at 954; *Desrosiers v. Sec'y of Dep't of Health and Human Serv.*, 846 F.2d 573, 575-76 (9th Cir. 1988); *Hall v. Secretary of Dep't of Health Educ. and Welfare*, 602 F.2d 1372, 1374-75 (9th Cir. 1979) (court determines whether or not Defendant applied proper legal standards). If it is not, the case is remanded to the agency for either further proceedings or an award of benefits. The court may within its discretion modify, with or without remanding (42 U.S.C. § 405(g)), and may order an award of benefits *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

If the court finds that a claimant's symptoms have been improperly discredited by the ALJ, the court can remand with directions that defendant credit it. *Vasquez v. Astrue*, 572 F.3d 586, 589 (9th Cir. 2009), or order defendant to find a claimant disabled based on the now-judicially credited testimony. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1401 (9th Cir. 1988). Where the court finds that the ALJ improperly rejected or ignored medical opinion that shows disability, the court can order

that a medical opinion be credited. *Regennitter v. Comm'r*, 166 F.3d 1294, 1300 (9th Cir. 1999).

### IV. Analysis

#### A. Legal Standard for Eligibility for Benefits

To determine whether Plaintiff was entitled to benefits, the ALJ followed a five-step evaluation of Plaintiff's disability pursuant to regulations at 20 C.F.R. §§ 404.1520, 416.920.

Under the first step, the ALJ considers whether the claimant is currently employed in substantial gainful activity. 20 C.F.R. § 404.1520(b). In this case, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 30, 2006. AR 14.

At step two, the ALJ considers whether the claimant has a medically determinable severe impairment. 20 C.F.R. § 404.1520(c). Here, the ALJ found that the claimant has the severe impairments of low back pain; neck pain; myofascial pain syndrome; and bilateral carpal tunnel syndrome. AR 14.

In the third step, the ALJ determines whether the claimant has a condition which meets or equals the conditions outlined in the Listing of Impairments Part 404 of the Regulations, Subpart P, Appendix 1 (after § 404.1599). 120 C.F.R. §§ 404.1520, 404.1525-1526. If the claimant's impairment or combination of impairments meets the criteria of a listing and meets the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If it does not, then the analysis must proceed to the next step. Here the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the applicable regulation. Specifically, the ALJ noted that the claimant does not meet the requirements of listings 1.04 or 1.02. AR 14.

Before moving to step four, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *Id.* Step four then asks whether the claimant has the residual functional capacity to

perform the requirements of this past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant has the residual functional capacity to do his past work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the final step.  Here, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b), except no climbing of ropes, ladders or scaffolds; occasional postural restrictions, i.e. balance, stoop, kneel crouch, crawl; no pushing/pulling of leg controls; sit and stand at will.  AR 14.  In making this determination, the ALJ found that Plaintiff is not disabled and is capable of performing his past relevant work as a technical specialist, network control operator, and user support analyst.  *Id.*

In the final step, the ALJ determines whether the claimant has the residual functioning capacity to perform any other work which exists in substantial numbers in the national economy.  20 C.F.R. § 404.1520(g), 404.1560(c).  Because the ALJ found that the Plaintiff has the residual functional capacity to perform his past relevant work, the ALJ did not need to, and did not analyze the final step.  AR 18.

### B.     Plaintiff's Contentions re ALJ Error and Analysis

**Issue 1:     Did the ALJ provide clear and convincing reasons for finding the Plaintiff not credible in his subjective report of pain?**

If an ALJ rejects the claimant's subjective complaints, he or she must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995).  Absent affirmative evidence of malingering, an ALJ cannot reject claimant's testimony without giving "clear and convincing reasons." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In addition to the objective medical evidence, 20 C.F.R. § 404.1529(c)(3) mandates that the ALJ consider the following when assessing the credibility of a claimant's description of pain: (i) daily activities; (ii) location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of medication (v) treatment, other than medications, plaintiff has received for pain or other symptoms; (vi) any measures plaintiff has used to relieve pain or other symptoms (e.g. lying flat on his

back, standing for 15-20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Discrepancy between Plaintiff's testimony and the objective medical findings regarding his pain is not in and of itself a clear and convincing reason for rejecting it. *Vertigan,* 260 F.3d at 1049 (citing *Smolen,* 80 F.3d at 1285).

Here, the ALJ found the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the. . . residual capacity assessment." AR 17. There was no evidence in the record that the Plaintiff was suspected of malingering. Thus, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his pain. *Vertigan,* 260 F.3d at 1049.

Plaintiff concludes without analysis that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony about his pain and resulting limitations, and misconstrued medical statements in support of his determination. Defendant argues that the ALJ had a valid basis for doubting and discrediting Plaintiff's credibility because: (1) Plaintiff's allegations were inconsistent with the objective medical evidence and opinions in the record; (2) the Plaintiff only received conservative treatment for his pain; and (3) Plaintiff's daily activities demonstrated that he was not as physically restricted as he claimed.

This Court reviewed the administrative record. For the reasons set forth below, this Court finds that while the ALJ refers to various doctors' opinions regarding Plaintiff's residual functional capacity, he does not sufficiently articulate his reasons for discrediting Plaintiff's testimony, as required by Ninth Circuit case law.

*1. Consistency of Plaintiff's Allegations with the Record*

In his decision, the ALJ references Plaintiff's treating doctor's opinion that Plaintiff's "symptoms were greater than objective findings." AR 16, 288. Defendant argues that the inconsistency between Plaintiff's allegations of pain and the objective medical

evidence and opinion in the record is reason enough for him to discredit Plaintiff's testimony. Defendant cites *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999), and would have this Court believe that "a conflict between subjective complaints and objective medical evidence in the record is sufficient reason that undermines a claimant's credibility." Def.'s Cross-Mot. Summ. J. 7.

Defendant takes too broad a view of *Morgan* and misstates Ninth Circuit law on this issue. In *Morgan*, the Ninth Circuit found where a "claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting, a specific finding of that fact may be sufficient to discredit claimant's allegations." *Morgan*, 169 F.3d at 600. In that case, the ALJ provided "specific and substantial reasons that undermined Morgan's credibility including, but not limited to, the fact that his testimony conflicted with the objective medical evidence in the record." *Id.* Mr. Morgan's disability claim arose out of depression and mental health issues. *Id.* at 595. The Ninth Circuit found the ALJ did not err because he pointed to specific evidence in the record, including psychiatrist reports, and identified which testimony was not credible and which evidence undermined Morgan's complaints. *Id.* at 599. Unlike *Morgan*, here the ALJ does not "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Id.*

In a subsequent case, the Ninth Circuit held that "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself is not a clear and convincing reason for rejecting it." *Vertigan* 260 F.3d at 1049 (citing *Smolen*, 80 F.3d at 1285). Here, the ALJ noted that "[i]n terms of the claimant's alleged spinal and rib pain, pain in his legs and neck pain, the MRIs and x-rays failed to show any significant abnormality." AR 17. However, upon review of the record, this Court notes that Plaintiff's 2007 MRI showed mild broad-based posterior disc bulge and moderate facet joint hypertrophy, as well as mild neural foraminal narrowing at L4-5 and L5-S1, and the MRI impression noted chronic pain syndrome; posterior neck pain due to muscle spasms from weakness and strain; mid back pain due to rib 8-9

dysfunction; low back pain due to L>R sacroiliac joint dysfunction; diffuse leg pain and hand numbness due to neuropathic pain syndrome (nerve pain); bilateral feet arch pain – possibly plantar fasciitis; depression; and insomnia.  AR 266.  The ALJ did not discuss these MRI findings in his decision, and did not cite to specific MRI reports in the record.

Defendant also quotes SSR 96-7p as stating "'One strong indication of the credibility of an individual's statements is their consistency. . . with other information in the case record" including "medical signs and laboratory findings and other information provided by medical resources.'"  Def.'s Cross-Mot. Summ. J. 7-8.  While this is technically an accurate quote, Defendant omits important information contained in the ellipses.  The rule actually reads "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  SSR 96-7p (emphasis added).  The rule then lists factors that the ALJ should consider, including "the degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by other medical sources, including information about history and medical treatment", and  "the consistency of the individual's own statements."  *Id.*  The Ninth Circuit has held that constant quest for medical treatment and pain relief can refute a finding that a claimant lacks credibility about pain and physical limitations.  *Vertigan*, 260 F.3d at 1050.

In *Vertigan*, the Ninth Circuit found that the ALJ erred by discrediting Ms. Vertigan's allegations of pain, holding that there was "only a scintilla of evidence in the record" to support the ALJ's finding, and that Ms. Vertigan's constant quest for medical treatment and pain relief refuted the ALJ's finding.  *Id.*  Here, like *Vertigan*, the administrative record shows that Plaintiff consistently reported his symptoms and pain to all of his treating doctors, his acupuncturist and his physical therapist.  The ALJ failed to mention how or if he considered Plaintiff's consistent complaints of pain in his decision.

2.      *Conservative Treatment*

In his decision, the ALJ found that Plaintiff had been "conservatively treated for

chronic pain" but does not provide support as to how he arrived at this characterization of Plaintiff's plain treatment. AR 17. In the Cross Motion for Summary Judgment Defendant argues that because surgery was not recommended for Plaintiff, his pain was conservatively treated. However, in his decision, the ALJ does not mention lack of surgery as a reason that he found Plaintiff's treatment for pain "conservative". Def.'s Cross-Mot. Summ. J. 11. To determine whether the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony about his pain, this Court looks at the information available in the administrative record, and does not consider new reasoning provided in Defendant's Cross Motion for Summary Judgment.

   Plaintiff argues that spinal surgery was not recommended because he "cannot tolerate opioids or NSAIDs." Pl.'s Mot. Summ. J. 18. However, this is contradicted by the medical records and Plaintiff's own testimony which show that he has been taking numerous NSAIDs and opiate pain medications on a daily basis for the past several years. AR 42-45, 193, 195, 264, 272. The administrative record does not reflect that Plaintiff was not recommended for surgery because he has an intolerance to any medication. One doctor's assessment in 2008 states that Plaintiff asked whether spine surgery was indicated and that the treating doctor responded that he did not recommend that Plaintiff "consider spine surgery." AR 273. In the next sentence of the assessment, the treating doctor states that Plaintiff's medication options are limited by opioid intolerance and an intolerance to NSAIDs. *Id.* In the following sentence the doctor moves on to yet another topic, discussing neuromodulators. Although the sentences discussing surgery and possible drug intolerance are situated next to each other in the paragraph, the doctor does not spell out a causal relationship between them. Moreover, these two sentences are contained in a paragraph in which the treating doctor addresses multiple subjects including surgery, medications, neuromodulators, TENS units, physical therapy, and a chronic pain management program. The paragraph reads as a separate list of possible ways to treat Plaintiff's pain, not as an explanation why surgery was not recommended.

   Upon review of the record, this Court found only one reference to Plaintiff's

treatment as "conservative." Plaintiff's treating physician, Dr. Mochizuki, characterized his *initial* treatment as conservative following the original injury when Plaintiff was only given ant-inflammatory medication. AR 192. Dr. Mochizuki went on to state that following several aggravations of his original injury, Plaintiff received *more intensive* treatment including epidural injections. *Id.* At the time of the filing, four years after the original date of injury, the record showed that Plaintiff had been prescribed numerous different NSAID and opiate drugs for pain, epidural injections, chiropractic care, message therapy, acupuncture, and a TENS unit. He was also referred to and participated in the "Intensive Chronic Pain Management Program (Level 3)" at Kaiser, which is the most intensive program, meeting four hours per day, four days a week, for ten weeks. *See* http://www.permanente.net/ homepage/kaiser/pages/d12856-top.html.

This Court gives deference to the ALJ. However, in his findings the ALJ failed to articulate his reasoning for finding that Plaintiff received only "conservative" pain treatment. Given the comprehensive list of treatments that Plaintiff received for pain, and the ALJ's lack of explanation for his finding, the Court cannot find the requisite substantial evidence in the record as a whole to support the ALJ's conclusion that Plaintiff was treated "conservatively" for pain. *Thomas,* 278 F. 3d at 954.

*3. Plaintiff's daily activities*

In his decision, the ALJ summarizes Plaintiff's testimony on this subject as "his medications help"; that he is "able to walk regularly depending on his pain level; drive a car; clean the bathroom; carry out the trash; go shopping with his wife; take his son to school and help him with his homework." AR 17. Defendant argues these activities demonstrate that Plaintiff is not as physically restricted as he claims, and thus supports the ALJ discrediting Plaintiff's testimony.

The Ninth Circuit has held the "[m]ere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan,* 260 F.3d at 1050. One does not need to be "utterly incapacitated" in order to be disabled." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Defendant does not

discuss this standard or how it would apply in this case.  Instead, Defendant relies on partial quotations from Plaintiff's testimony without fully exploring or discussing the ALJ's reasons for omitting the qualifying portions of Plaintiff's testimony.

Upon review of the record, this Court finds that while Plaintiff mentioned the above activities in his testimony, he qualified them with restrictions and limitations based on his pain.  For example, about walking, Plaintiff testified that on a good day he can walk 50 yards, but on a bad pain day he cannot walk more than 10 feet.  AR 47.  Plaintiff testified that "it's really hard" for him to take out the trash and that "it usually weighs too much for me to carry."  AR 42.  Plaintiff also testified that when he goes shopping with his wife he "usually has to sit down and wait for her at the registers" and only walks around "a little bit."  AR 42.  The ALJ does not mention Plaintiff's qualifying statements, and thus omits essential portions of the record.

Defendant also argues that "Plaintiff's impairments did not prevent him from attending computer classes or working on the computer" and that this "indicated that he was not as dysfunctional as he claimed."  Def.'s Cross-Mot. Summ. J. 12.  However, the record reflects that Plaintiff stopped attending computer classes and was unable to complete his retraining program because his pain was so severe that he was not able to make the commute or to sit for the required duration of the class. AR 50.

**Issue 2:    Did the ALJ consider medical evidence regarding Plaintiff's obesity and its effect on his ability to work?**

Social Security Rules establish that obesity should be considered in determining whether "the individual has a medically determinable impairment"; "the individual's impairment(s) is severe"; the individual's impairment(s) meets or equals the requirements of a listed impairment in the listings"; and "the individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy."  SSR 02-1p.  An ALJ must evaluate whether obesity increases the severity or functional imitations of a claimant's other impairments.  *Id.*  Here, the ALJ must consider all of the relevant factors, including obesity, even though Plaintiff did not fully argue to the ALJ that his obesity was a limiting

1  factor. *Celaya v. Barnhart*, 332 F.3d 1177, 1181 (9th Cir. 2003).

2  Plaintiff claims that the ALJ failed to consider Plaintiff's obesity. Plaintiff's weight
3  reflected in the medical record shows that he gained approximately 60 lbs between
4  2005-2008 (AR 260) and concludes that "[s]ince Plaintiff's obesity significantly limits his
5  ability to do basic work activities" the ALJ therefore erred by failing to find that Plaintiff's
6  obesity is a severe impairment. Pl.'s Mot. Summ. J. 20. Plaintiff jumps to this
7  conclusion without articulating clearly how he reached this conclusion. The extent of
8  Plaintiff's analysis is that he is obese, that his obesity causes him pain, and that
9  because ALJ didn't find his obesity to be a severe impairment he must not have
10 properly considered it. This is a conclusory argument; the fact that Plaintiff is obese
11 does not necessarily mean that the ALJ erred by not finding it to be a severe
12 impairment.

13 This Court finds that the ALJ did consider Plaintiff's obesity. The ALJ's
14 consideration is reflected both in his express language, as well as the fact that he
15 credited assessments from doctors who considered it. In his findings the ALJ states
16 that he "considered the claimant's obesity in assessing the residual functional capacity."
17 AR 14. The ALJ also credited Dr. Mochizuki's functional assessment, which noted that
18 Plaintiff's obesity impacted his back impairments. AR 14, 220, 315. Additionally, during
19 the hearing, the ALJ noted that weight is a factor. AR 30. Accordingly, this Court finds
20 that there is substantial evidence in the record as a whole to support that the ALJ did
21 consider Plaintiff's weight in determining the RFC. *Andrews,* 53 F. 3d at 1039.

22 **Issue 3:** **Did the ALJ err by failing to include sitting limitation in the RFC finding?**
23 The RFC assessment "must be based on *all* of the relevant evidence in the case
24 record" including: medical history, medical signs and laboratory findings, medical source
25 statements, reports of daily activities and lay evidence, effects of symptoms, including
26 pain, that are reasonably attributed to a medically determinable impairment. SSR 96-8p
27 (emphasis in the original).

28 The ALJ's RFC includes a provision allowing Plaintiff to "sit and stand at will."
Plaintiff claims that the ALJ erred by failing to include Dr. Mochizuki's and Dr. Bradus'

suggested limitation of sitting a maximum of 30 minutes per hour in the RFC finding. Plaintiff asserts that the ALJ's sit/stand limitation is logically inconsistent because "if Plaintiff stands or walks for 30 minutes or less in an hour, under a sit/stand option he will necessarily sit for more than 30 minutes."  Pl.'s Mot. Summ. J. 22.

Upon review of the record, this Court finds that the ALJ did not err by allowing the Plaintiff a sit or stand at will option.  The ALJ properly accounted for the doctors' recommended sitting and standing restrictions. In the RFC finding, the ALJ accounted for Dr. Mochizuki's sitting and standing restrictions by including a sit or stand at will option.  AR 14, 18.  By including the at will option, even if Plaintiff worked at a job that required no walking, Plaintiff could alternate sitting and standing every 30 minutes; thus avoiding the need to sit or stand for more than 30 minutes per hour.  Thus, the ALJ's RFC would allow Plaintiff to perform work without exceeding Dr. Mochizuki's assessed limitations.  AR 195.

### V.     Conclusion & Disposition

The Court carefully considered the moving and opposing pleadings in both motions, the administrative record in this case, and the applicable law.

The Court hereby finds that the ALJ erred in not providing clear and convincing reasons for finding the claimant not entirely credible regarding the severity of his pain and its limiting effects.  The Court denies Defendants' motion, grants Plaintiff's motion in part and remands the matter back to the agency for further findings.  In his prayer for relief, Plaintiff requests that he be awarded benefits, or in the alternative that his case be remanded for a new hearing and that the ALJ be ordered to consider all of the limitations of Plaintiff's physical and mental impairments.  However, Plaintiff did not include an argument or analysis regarding mental impairments.  For the reasons set forth above and summarized again below, this Court remands the matter back to the agency for further findings regarding Plaintiff's credibility.

**Issue 1:     Whether the ALJ provided clear and convincing reasons for finding the Plaintiff not credible.**

This Court finds that the ALJ did not provide the required "specific, cogent

reasons" for discrediting Plaintiff's testimony regarding his pain. *Lester,* 81 F.3d at 834. There is substantial evidence in the record that Plaintiff continuously sought medical treatment for his pain, and that his pain increased over time. The record does not reflect evidence of malingering. Plaintiff testified that his pain limits his daily activities and caused him to not be able to finish a retraining program.

While it is within the ALJ's discretion to discredit Plaintiff's testimony, he must articulate clear and convincing reasons for doing so. *Vertigan*, 260 F.3d at 1049. Discrepancy between Plaintiff's testimony and the objective medical findings regarding his pain is not in and of itself a clear and convincing reason for rejecting it. *Id. (*citing *Smolen*, 80 F.3d at 1285). Here, the ALJ discussed only part of the findings in the MRI reports and failed to articulate why he ignored other portions. Although the ALJ refers to various doctors' opinions regarding Plaintiff's residual functional capacity (AR 16-17), he does not actually provide clear and convincing reasons for rejecting Plaintiff's testimony, as required by Ninth Circuit case law. This Court finds the ALJ insufficiently stated his reasons for not finding the Plaintiff credible and thus remands this case back to the agency for further findings on this issue.

**Issue 2:     Whether the ALJ considered medical evidence regarding Plaintiff's obesity and its effect on his ability to work.**

This Court finds substantial evidence in the record that the ALJ considered Plaintiff's weight in determining the RFC. The ALJ states in his findings that he considered Plaintiff's obesity, he credited treating physicians who considered Plaintiff's obesity, and he noted at the hearing that it was a factor. Accordingly, this Court finds that the record supports that the ALJ did consider Plaintiff's weight in determining the RFC.

**Issue 3:     Whether the ALJ erred by failing to include sitting limitation in the RFC finding.**

As discussed above, the ALJ's RFC allows for a sit/stand option. By including this at will option, even if Plaintiff worked at a job that provided for no walking, Plaintiff could alternate sitting and standing every 30 minutes; thus avoiding the need to sit or

stand for more than 30 minutes per hour. The Court finds no error in the sit/stand option in the RFC.

### V. Conclusion

The Court hereby DENIES Defendants' motion, GRANTS Plaintiff's motion in part and remands the matter to the agency for further findings regarding Plaintiff's credibility and testimony regarding the limiting effects of his pain.

IT IS SO ORDERED

DATED: April 5, 2011

_____
James Larson
United States Magistrate Judge

G:\JLALL\CASES\CIVIL\10-2637\order 12, 19. FINAL.wpd